IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
|   ARMANDO AMAYA, | ) | |
| | ) | |
|      Petitioner, | ) | |
| | ) | |
|       v. | ) | 07 C 6793 |
| | ) | |
| KEN BARTLEY, | ) | |
|   Warden, Tamms Correctional Center, | ) | The Honorable |
| | ) | John W. Darrah, |
|      Respondent. | ) | Judge Presiding. |

---

**ANSWER TO
PETITION FOR WRIT OF HABEAS CORPUS**

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United

States District Courts and this Court's order of March 4, 2008, respondent KEN

BARTLEY submits his answer to petitioner's petition for writ of habeas corpus, and

states as follows:

I.    **Procedural History**

1.    Petitioner Armando Amaya is incarcerated at the Tamms Correctional

Center in Tamms, Illinois, where he is in the custody of respondent Ken Bartley.

Petitioner's prison identification number is K75877.

**Petitioner's Convictions and Direct Appeal**

2.    Following a jury trial in the Circuit Court of Kane County, Illinois,

petitioner was convicted of one count of murder, two counts of attempted murder,

two counts of aggravated battery, and one count of aggravated discharge of a

firearm. *People v. Amaya*, 748 N.E.2d 1251 (Ill.App. 2001) (Exh. A). The trial court sentenced petitioner to an aggregate term of 62 years' imprisonment. *Id.* at 1255-56.

3.     Petitioner's convictions arose out of an October 29, 1997 incident in Aurora, Illinois. Petitioner, a member of the Latin Kings street gang, approached a group of people gathered outside the rear of an apartment building located in a part of Aurora controlled by the Gangster Disciples, a rival street gang. Petitioner fired a gun into the crowd, killing Jermaine Lambert and seriously wounding Alonzo Matthews and Tara Harris. *Amaya*, 748 N.E.2d at 1252-55.

4.     Petitioner appealed to the Appellate Court of Illinois, Second District, raising three claims:

(A)     the trial court erred by instructing the jury on an accountability theory of guilt;

(B)     petitioner's conviction for aggravated discharge of a firearm should be vacated under Illinois law's "one-act, one-crime" doctrine; and

(C)     the trial court violated petitioner's right to a jury trial and due process when it ordered that petitioner's sentences for the murder and attempted murder convictions be served consecutively.

*See* Petitioner's Brief, *People v. Amaya*, No. 2-00-0099 (Ill.App.) (Exh. B); State's Brief, *People v. Amaya*, No. 2-00-0099 (Ill.App.) (Exh. C); Petitioner's Reply Brief, *People v. Amaya*, No. 2-00-0099 (Ill.App.) (Exh. D).

5.     On May 10, 2001, the state appellate court affirmed in part and vacated in part. The court upheld petitioner's convictions and sentences for murder

and attempted murder, but vacated his conviction and sentence for aggravated

discharge of a firearm.  *Amaya*, 748 N.E.2d at 1256-59.

> 6.    Petitioner filed a petition for leave to appeal (PLA) in the Illinois

Supreme Court that raised two claims:

> (A)    the trial court's error in instructing the jury on an accountability
> theory of guilt was not harmless error; and

> (B)    the trial court violated petitioner's right to a jury trial and due process
> when it ordered that petitioner's sentences for the murder and
> attempted murder convictions be served consecutively.

PLA, *People v. Amaya*, No. 91749 (Exh. E).

> 7.    The state supreme court denied the PLA on October 3, 2001.  Order

Denying PLA, *People v. Amaya*, No. 91749 (Exh. F).

> 8.    Petitioner did not file a petition for writ of certiorari in the United

States Supreme Court.

## Petitioner's First Postconviction Petition

> 9.    On March 15, 2002, petitioner filed in the Circuit Court of Kane

County a counseled postconviction petition under 725 ILCS 5/122-1, *et seq.*,

claiming that his:

> (A)    trial counsel was ineffective for failing to:

> > (1)    call any witnesses in support of an alibi defense;

> > (2)    find and interview any alibi witnesses;

> > (3)    obtain a transcript of the testimony given by petitioner's
> > purported alibi witnesses in *People v. Amaya*, No. 97 CR 2326;
> > and

-3-

(4)     file a motion to quash arrest and suppress evidence.

*See* Postconviction Petition, *People v. Amaya*, No. 98 CF 535 (Exh. G).

10.     Following an evidentiary hearing, the postconviction trial court

dismissed the petition on July 15, 2005.  *See* Order Dismissing Postconviction

Petition, *People v. Amaya*, No. 98 CF 535 (Exh. H).

11.     Petitioner appealed, raising one claim:

(A)     trial counsel was ineffective for failing to present an alibi defense.

*See* Pet. Br., *People v. Amaya*, No. 2-05-0706 (Ill.App.) (Exh. I); State's Br., *People v.

Amaya*, No. 2-05-0706 (Ill.App.) (Exh. J); Pet. Reply Br., *People v. Amaya*, No. 2-05-

0706 (Ill.App.) (Exh. K).

12.     On June 22, 2007, the state appellate court affirmed.  *See* Rule 23

Order, *People v. Amaya*, No. 2-05-0706 (Ill.App. 2007) (Exh. L).

13.     Petitioner filed a PLA in the state supreme court, raising one claim:

(A)     trial counsel was ineffective for failing to present an alibi defense.

*See* PLA, *People v. Amaya*, No. 105041 (Exh. M).

14.     On September 26, 2007, the state supreme court denied petitioner's

PLA.  *See* Order Denying PLA, *People v. Amaya*, No. 105041 (Exh. N).

15.     Petitioner did not file a petition for writ of certiorari in the United

States Supreme Court.

### Petitioner's Second Postconviction Petition

16.     On April 27, 2007 — while petitioner's appeal from the judgment
dismissing his first postconviction petition was pending — petitioner filed in the
Circuit Court of Kane County a motion for leave to file a successive postconviction
petition.  *See* 725 ILCS 5/122-1(f) ("Only one petition may be filed by a petitioner
under this Article without leave of court.").  Petitioner also submitted a successive
postconviction petition that raised one claim:

> (A)     the prosecution did not disclose during discovery an allegedly
> exculpatory statement made by Sharona Weakly.

*See* Motion for Leave to File Successive Postconviction Petition, *People v. Amaya*,
No. 98 CF 535 (Exh. O); Successive Postconviction Petition, *People v. Amaya*, No. 98
CF 535 (Exh. P).

17.     On May 9, 2007, the state trial court denied petitioner leave to file the
successive petition after finding that petitioner could not satisfy the "cause and
prejudice" requirement set forth in section 122-1(f) of the Illinois Post-Conviction
Hearing Act.  *See* Order of May 9, 2007, *People v. Amaya*, No. 98 CF 535 (Exh. Q).
Because the trial court denied petitioner leave to file his second petition, that
petition was not "properly filed" under Illinois law.  *People v. LaPointe*, 879 N.E.2d
275, 278 (Ill. 2007) ("A second postconviction petition will not be considered filed
until leave to file is expressly granted by the circuit court in accordance with section
122-1(f) of the Act.").

18.     On May 23, 2007, petitioner filed a notice of appeal from the judgment

denying leave to file his second postconviction petition.  *See* Certified Statement of

Disposition, *People v. Amaya*, No. 98 CF 535, at 28 (Exh. R).  Petitioner's appeal in

*People v. Amaya*, No. 2-07-0519 (Ill.App. 2d Dist), is pending in the state appellate

court, and petitioner's brief as appellant is due to be filed on or before October 1,

2008.[1]

### Federal Habeas Proceedings

19.     Petitioner filed the instant habeas petition in the United States

District Court for the Southern District of Illinois on October 18, 2007, the date on

which it was received by the district court clerk.  Petitioner did not indicate when (if

at all) he placed his petition in the internal mailing system at Tamms Correctional

Center, and he did not indicate that postage had been prepaid.  Consequently,

petitioner may not avail himself of the "mailbox rule" applicable to habeas corpus

cases.  *See* Rule 3(d), Rules Governing Section 2254 Cases in the United States

District Courts; *see also Ingram v. Jones*, 507 F.3d 640, 644 (7th Cir. 2007)

(requiring "strict compliance" with similarly-worded "mailbox rule" in Fed. R. App.

P. 4(c)).  On December 3, 2007, the instant petition was transferred to this Court.

(Doc. 7).

---

[1] On May 29, 2008, counsel for respondent confirmed this information during a telephone conversation with personnel in the Office of the Clerk of the Appellate Court of Illinois, Second District.

20.     The instant petition raises one claim: that trial counsel was ineffective for failing to present an alibi defense.  *See* Petition (Pet.) at 7; *see also* Attached Memorandum of Law (Mem.) at 3-18.

21.     Petitioner has exhausted his state court remedies for the claim raised in his habeas petition, as no further litigation would be permitted for it in state court because that claim has been presented to all levels of the state courts and rejected on the merits.  *See* 28 U.S.C. § 2254(b); *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (Illinois prisoner exhausts claim by raising it in Illinois Appellate Court and Illinois Supreme Court).

22.     Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, the following state court materials are being filed as exhibits to this Answer under separate cover:

Exhibit A:     *People v. Amaya*, 748 N.E.2d 1251 (Ill.App. 2001);

Exhibit B:     Pet. Br., *People v. Amaya*, No. 2-00-0099 (Ill.App.);

Exhibit C:     State's Br., *People v. Amaya*, No. 2-00-0099 (Ill.App.);

Exhibit D:     Pet. Reply Br., *People v. Amaya*, No. 2-00-0099 (Ill.App.);

Exhibit E:     PLA, *People v. Amaya*, No. 91749;

Exhibit F:     Order Denying PLA, *People v. Amaya*, No. 91749;

Exhibit G:     Postconviction Petition, *People v. Amaya*, No. 98 CF 535;

Exhibit H:     Order Dismissing Postconviction Petition, *People v. Amaya*, No. 98 CF 535;

Exhibit I:     Pet. Br., *People v. Amaya*, No. 2-05-0706 (Ill.App.);

Exhibit J:     State's Br., *People v. Amaya*, No. 2-05-0706 (Ill.App.);

Exhibit K:     Pet. Reply Br., *People v. Amaya*, No. 2-05-0706 (Ill.App.);

Exhibit L:     Rule 23 Order, *People v. Amaya*, No. 2-05-0706 (Ill.App. 2007)

Exhibit M:     PLA, *People v. Amaya*, No. 105041;

Exhibit N:     Order Denying PLA, *People v. Amaya*, No. 105041;

Exhibit O:     Motion for Leave to File Successive Postconviction Petition, *People v. Amaya*, No. 98 CF 535;

Exhibit P:     Successive Postconviction Petition, *People v. Amaya*, No. 98 CF 535;

Exhibit Q:     Order of May 9, 2007, *People v. Amaya*, No. 98 CF 535;

Exhibit R:     Certified Statement of Disposition, *People v. Amaya*, No. 98 CF 535;

Exhibit S:     Trial Transcripts, *People v. Amaya*, No. 98 CF 535;

Exhibit T:     Transcript of Postconviction Evidentiary Hearing, *People v. Amaya*, No. 98 CF 535 (Apr. 20, 2005);

Exhibit U:     Transcript of Postconviction Evidentiary Hearing, *People v. Amaya*, No. 98 CF 535 (May 12, 2005);

Exhibit V:     Transcript of Postconviction Evidentiary Hearing, *People v. Amaya*, No. 98 CF 535 (Jul. 15, 2005);

Exhibit W:     Affidavits of Arnoldo Castillo (executed Jul. 25, 2003); and

Exhibit X:     Transcript of December 12, 1997 Bond Reduction Hearing, *People v. Amaya*, No. 97 CF 2326.

23.    In compliance with Rule 5, respondent states the entire state court record, which is in the custody of the Office of the Illinois Appellate Defender, Second District, consists of six volumes of reports of proceedings, three volumes of

common law records, one volume of supplemental reports of proceedings, and one packet of exhibits.  It is unnecessary to file the complete state court record with the Court at this time because the petition can fairly and justly be disposed of based on the exhibits filed with this Court and listed above.

## II.     Factual Background

Unless otherwise indicated, the following factual recitation is taken from the state appellate court's decision on direct appeal.  *See Amaya*, 748 N.E.2d at 1252-55.  The "state court['s] factual findings . . . are presumed correct," and "the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"  *Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (quoting 28 U.S.C. § 2254(e)(1)).

On October 29, 1997, at approximately 8:50 p.m., Jermaine Lambert, Alonzo Matthews, and Tara Harris were shot outside of an apartment building located at 309 East New York Street, on the corner of New York and Lincoln streets in Aurora, Illinois.  *Amaya*, 748 N.E.2d at 1252.  Lambert died at the scene, but Matthews and Harris recovered after undergoing surgery.  *Id.* at 1252-53.  The shooting occurred in the rear walkway of the apartment building, and the scene was illuminated by lights from the adjacent parking lot.  *Id.* at 1255.

The State presented testimony from two eyewitnesses who identified petitioner as the shooter: Shayla Johnson and Nicole Pearson.  *Id.* at 1253-54.  Shayla was outside the apartment building watching an argument between two

girls when she saw petitioner approaching from the direction of Lincoln Street. *Id.* at 1253. Petitioner's clothes were navy blue or black, and he was approximately 5' 4" and weighed 130-140 pounds. *Id.* Shayla got a "good look" at petitioner as he approached. *See* Exh. S at 451, 453.[2] Petitioner bumped into a woman and, after pushing her out of the way, began firing what looked to Shayla like a revolver. He was "[h]andling the weapon wildly" as he fired the gun five or six times. *Amaya*, 748 N.E.2d at 1253. Shayla had seen petitioner five or six times before the shooting, and recognized petitioner as "Scarecrow." *Id.*

Earlier on the evening of the shooting, Shayla had seen petitioner and "two other Hispanic men in a white, four-door Celebrity or Century with a red stripe. Two of the car's occupants hung out of the car windows yelling 'King Love,' 'GDK [Gangster Disciple Killer],' and 'Kings rule.'" *Id.*

After the shooting stopped, Shayla ran from the scene; she did not speak with police officers because she did not want to get involved and thought no one had been shot. *Id.* On December 19, 1997, while at the police station regarding an unrelated incident, Shayla spoke to Aurora police about the shooting. *Id.* Shayla identified petitioner as the shooter in a lineup conducted on February 4, 1998.

Nicole Pearson was outside the apartment building at 309 East New York Street on October 29, 1997, arguing with some other girls. *Id.* When the argument

---

[2] In citing to the transcripts of petitioner's trial and the postconviction evidentiary hearing, respondent refers to the page number indicated in the lower right hand corner.

ended, Nicole saw "a short, teenage 'Mexican' man, dressed in black and wearing a black hat," approach the apartment building from Lincoln Street. *Amaya*, 748 N.E.2d at 1253. Nicole identified the man as petitioner. *Id.* Petitioner was having difficulty handling the "big gun" as he fired it into the crowd. *Id.* Nicole was on the ground when petitioner pointed the gun at her, but he did not shoot at her. *Id.* When petitioner moved away and continued firing, Nicole got up and ran from the scene. *Id.* Like Shayla Johnson, Nicole had previously seen petitioner before October 29, 1997, and Nicole, too, knew petitioner by the name "Scarecrow." *Id.* Also like Shayla Johnson, Nicole had seen petitioner earlier on the night of the shooting in a white car with two other men. *Amaya*, 748 N.E.2d at 1253.

Nicole identified petitioner as the shooter during a lineup conducted on February 4, 1998. *Id.* at 1254. Initially, Nicole told police during the lineup that she did not think petitioner had been the shooter because he had gained weight since the shooting. She also told officers that "she was hesitant to testify because she was afraid [petitioner] would kill her." *Id.* at 1253-54. At that point, Nicole identified petitioner as having been present during the shooting. *Id.* at 1254. After talking with police, Nicole stated that petitioner was the shooter. Nicole admitted that her friend Shayla Johnson thought that petitioner was the shooter, and that Shayla told Nicole that petitioner's nickname was "Scarecrow." *Id.*

The two surviving victims — Alonzo Matthews and Tara Harris — also testified against petitioner. *Id.* at 1252-53. Both Alonzo and Tara described the

shooter as a "Mexican" man dressed in a black hoodie who approached the apartment building from Lincoln Street. *Amaya*, 748 N.E.2d at 1252. Alonzo testified that the shooter was 5' 8" or 5' 9." However, Alonzo could not identify the shooter in court because he had seen the shooter's face for only two seconds before he was shot in the stomach. *Id.* Tara described the shooter as 5' 5" or 5' 6" and in his late teens or early 20s. *Id.*

William McCalister also testified for the State. Just before the shooting, William saw outside the apartment building a man wearing dark clothing with a hood. *Id.* at 1254. A few minutes later, William heard gunshots. *Id.*

Tracy Johnson testified at trial that, prior to the shooting, he saw three Hispanic men drive by the apartment two or three times in a white Chevrolet Celebrity. *Id.* The men in the car made signs that were disrespectful to the Gangster Disciples. *Amaya*, 748 N.E.2d at 1254. After Tracy heard three gunshots, he saw the same three men whom he had seen earlier that night in the white Celebrity run from the area of the shots, cross the street, and get into the white Celebrity that was parked at the Lincoln Laundry on Lincoln Street. *Id.* At 10:30 p.m., Tracy saw police officers stop the white Celebrity in which the three men were riding; Tracy spoke with police at that point and told them what he knew *Id.* In a taped statement made at approximately 11:50 that night, Tracy admitted that, both before and after the shooting, he drank a pint of gin and some beer with his friends. *Id.* However, Aurora police officer James Fancsali testified that, when Tracy made

the tape-recorded statement, he did not appear intoxicated and did not smell of alcohol. *Id.* at 1255.

When police officers stopped the white Celebrity at approximately 10:30 p.m., petitioner was sitting in the front passenger seat. He was wearing faded blue jeans and a black hooded sweatshirt. *Id.* at 1254. Romero Sandoval, another occupant, was wearing a dark Nike hooded pullover and a black leather jacket. The third passenger was George Gamboa. *Amaya*, 748 N.E.2d at 1254.

The State presented testimony from Aurora police sergeant Mike Langston, an expert in gang activity. *Id.* at 1254-55. Sgt. Langston testified that petitioner, Sandoval, and Gamboa were members of the Latin Kings street gang, and that petitioner's nickname was "Scarecrow." *Id.* at 1254. The shooting occurred in Gangster Disciples territory, but none of the victims belonged to that gang. *Id.* Sgt. Langston also testified that the Lincoln Laundry — outside of which the white Celebrity had been parked during the shooting — was on the edge of Gangster Disciple territory. *Id.* at 1254-55.

Following deliberations, the jury convicted petitioner of murdering Jermaine, attempting to murder both Alonzo and Tara, aggravated battery as to both Alonzo and Tara, and aggravated discharge of a firearm. *Amaya*, 748 N.E.2d at 1255. The trial court sentenced petitioner to 40 years' imprisonment for the murder conviction, 10 and 12 years' imprisonment for the attempted murder convictions, respectively, and nine years' imprisonment for the aggravated discharge of a firearm conviction.

*Id.* The court ordered the sentences for the murder and attempted murder convictions to be served consecutively, for an aggregate term of 62 years' imprisonment.[3]

## III.    Petitioner Has Satisfied The Exhaustion Requirement.

As noted above, petitioner's *Strickland* claim is exhausted because it was presented to the state courts during one complete round of postconviction review and adjudicated on the merits. *See* ¶21, *supra*. Therefore, petitioner has satisfied the exhaustion requirement of 28 U.S.C. § 2254(b), and this Court may address the instant petition at this time.

However, respondent notes that petitioner is currently appealing the judgment of the Circuit Court of Kane County denying him leave to file his second postconviction petition. *See* ¶¶16-18, *supra*. Liberally construed, petitioner's proposed successive petition appears to raise a claim that prosecutors violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose an allegedly exculpatory statement made by Sharona Weakly. *See* Exh. P. In denying petitioner leave to file a second postconviction petition raising that claim, the state trial court expressly found that the factual predicate of petitioner's *Brady* claim was previously available, and thus the claim could have been raised earlier. *See* Order of May 9, 2007, *People v. Amaya*, No. 98 CF 535, at 1-2 (Exh. Q). Therefore, the trial court

---

[3] For sentencing purposes, petitioner's aggravated battery convictions merged with his attempted murder convictions. On direct appeal, the state appellate court vacated, under Illinois's "one-act, one-crime" doctrine, petitioner's conviction for aggravated discharge of a firearm. *Amaya*, 748 N.E.2d at 1256-57.

ruled that petitioner failed to show the "cause" needed to obtain the court's leave to file the second petition. *See id.*; *see also* 725 ILCS 5/122-1(f) ("Leave of court [to file a second or successive postconviction petition] may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial postconviction proceedings and prejudice results from that failure.").

Petitioner has not raised any *Brady* claim in the instant habeas petition. But the fact that successive postconviction proceedings are pending in the state courts raises three potential concerns — none of which prevents this Court from presently ruling on the merits of petitioner's exhausted *Strickland* claim. First, because the state trial court denied petitioner leave to file his second postconviction petition, that petition was not properly filed under Illinois law, and thus cannot toll AEDPA's limitations period under § 2244(d)(2). *See Fernandez v. Sternes*, 227 F.3d 977, 978 (7th Cir. 2000) ("if the state court rejects [a postconviction petition] as procedurally irregular it has not been 'properly filed'" for purposes of § 2244(d)(2)); *see also Duncan v. Walker*, 533 U.S. 167, 172 (2001) (the pendency of a federal habeas petition does not toll § 2244(d)(1)'s limitations period). Accordingly, a dismissal without prejudice — on the ground that available state court remedies with respect to petitioner's *Brady* claim have not been exhausted — would subject petitioner to a risk that, when he returns to federal court after exhausting those state court remedies, his petition would be time-barred. *See generally Dolis v. Chambers*, 454 F.3d 721, 723-24 (7th Cir. 2006).

The second consequence is closely related to the first. If petitioner wished to raise a *Brady* claim in the instant habeas action, and if this Court were to grant petitioner leave to amend his petition to raise that claim, petitioner could not invoke the stay-and-abeyance procedure approved of in *Rhines v. Weber*, 544 U.S. 269, 275 (2005).[4] Because the state trial court denied petitioner leave to file his second postconviction petition on the ground that the factual predicate of the *Brady* claim was not newly discovered, it is doubtful that petitioner could show (1) "good cause" for failing to exhaust his *Brady* claim before he filed the instant federal petition; or (2) that his *Brady* claim is not "plainly meritless," as it was not — and cannot be — considered on the merits by the state courts in an improperly filed successive postconviction petition. *See LaPointe*, 879 N.E.2d at 278 (successive petition may not be considered filed, even if it is previously accepted by the clerk of court, unless circuit court expressly grants leave to file).

Third, by bringing the instant federal habeas petition now, and raising only the ineffective assistance of counsel claim, petitioner is likely forfeiting federal review of that *Brady* claim. Petitioner would need the approval of the Seventh Circuit before he could file a successive federal habeas petition that raised any claim not raised in the instant petition. *See* 28 U.S.C. § 2244(b)(3)(A).

---

[4] At this stage of proceedings, *Rhines* is not applicable because petitioner's habeas petition is not "mixed," as it contains only an exhausted claim. *See Rhines*, 544 U.S. at 275 (noting that a "mixed petition" contains exhausted and unexhausted claims).

Because the only claim raised in the instant petition is exhausted, this Court should address that claim and deny habeas relief on the merits.

## IV. Petitioner's Claim

Petitioner claims that trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to present an alibi defense.  *See* Pet. at 7; *see also* Mem. at 3-18.  Specifically, petitioner argues that trial counsel should have called four witnesses — Sonia Delatorre, Elizabeth Delatorre, Romero Sandoval, and George Gamboa — who would have testified that petitioner was with them at the Delatorre house at 8:50 on the night of the shooting.  Mem. at 1. Petitioner's claim has no merit.

At the postconviction evidentiary hearing, trial counsel testified that, when he and petitioner discussed before trial the viability of the proposed alibi defense, petitioner admitted that he was present during the shooting at 309 East New York Street.  *See* Exh. T at 472-73, 493-94.  After hearing petitioner's admission, trial counsel became concerned "that the alibi witnesses would perhaps not testify truthfully," and that it became "impossible" for him to put on an alibi defense.  *See* Exh. L at 3-4.

Although petitioner denied having made that admission, *see* Exh. U at 1270-71, the postconviction trial court credited counsel's version of events and held that, in light of petitioner's admission that his alibi was false, it was reasonable for counsel not to present the false alibi defense.  Exh. V at 1317-18; *see also* Exh. L at

4-5.  In support of that holding, the court cited to Illinois Supreme Court Rule of Professional Conduct 3.3(a)(4), which states that, "[i]n appearing in a professional capacity before a tribunal, a lawyer shall not offer evidence that the lawyer knows to be false."  Exh. V at 1317.  "Based upon [petitioner's] statements to defense counsel," the trial court found, "defense counsel would have violated this Rule had he offered an alibi defense."  *Id.*  The trial court further held that petitioner was not prejudiced by trial counsel's failure to present the alibi defense.  *See id.* at 1318-19.  On postconviction appeal, the state appellate court affirmed, holding that there was "ample evidence to support the trial court's finding that defense counsel [ ] had a good faith belief that [petitioner's] alibi witnesses would lie if called to testify at trial."  Exh. L at 5.

Petitioner is not entitled to habeas relief on his *Strickland* claim because the state appellate court reasonably determined that, in light of the evidence presented at the postconviction evidentiary hearing, trial counsel made a good faith determination that petitioner's alibi witnesses would testify falsely if called at trial.  Moreover, the state appellate court's holding that trial counsel did not perform deficiently in declining to present testimony he believed in good faith to be perjured was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.  Finally, the state trial court's holding that petitioner failed to satisfy *Strickland*'s prejudice prong was not objectively unreasonable.  This Court should therefore deny habeas relief.

A.     **Standard of review**

1.     **The § 2254(d) standard**

Petitioner's ineffective assistance claim was fairly presented to and adjudicated on the merits by the Illinois state courts, so review of that claim on federal habeas is governed by 28 U.S.C. § 2254(d).  Section 2254(d) provides that a habeas petition shall not be granted unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A state court's decision is "contrary to" clearly established federal law only if the court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams v. Taylor*, 529 U.S. 362, 405 (2000),"decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court's decision involves "an unreasonable application" of federal law only when the "state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously

-19-

or incorrectly.  Rather, that application must also be unreasonable." *Id*. at 410.  Put another way, where "the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  "This is a difficult standard [for habeas petitioners] to meet; 'unreasonable' means 'something like lying well outside the boundaries of permissible differences of opinion.'" *Gilbert v. Merchant*, 488 F.3d 780, 790 (7th Cir. 2007) (quoting *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003)).  The state court decision is reasonable if it is "minimally consistent with the facts and circumstances of the case." *Danks v. Davis*, 355 F.3d 1005, 1008 (7th Cir. 2004) (internal quotations and citation omitted).

Under § 2254(d)(2), "a petitioner's challenge to a decision based on a factual determination will not succeed if the petitioner merely evidences that the state court committed error." *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). Instead, a federal habeas court "must be objectively convinced that the record before the state court does not support the state court's findings in question." *Ben-Yisrayl v. Davis*, 431 F.3d 1043, 1048 (7th Cir. 2005); *cf. Julian v. Bartley*, 495 F.3d 487, 494 (7th Cir. 2007) (granting habeas relief under § 2254(d)(2) where state court factual determination "was against the clear weight of the evidence and [was], therefore, an objectively unreasonable determination of undisputed facts").

## 2.    The *Strickland* standard

To prevail under *Strickland*, a defendant must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness; and (2) but for counsel's alleged errors or omissions, there is a reasonable probability that the outcome of the proceeding would have been different.  *Strickland*, 466 U.S. at 688, 694.  But on federal habeas review petitioner:

> must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly.  Rather, he must show that the [state court] applied *Strickland* to his case in an objectively unreasonable manner.

*Bell*, 535 U.S. at 698-99 (internal citations omitted).

Review of counsel's performance is "highly deferential" even without § 2254(d) deference.  *See Johnson v. Loftus*, 518 F.3d 453, 457 (7th Cir. 2008).  That is because "*Strickland* builds in an element of deference to counsel's choices in conducting the litigation."  *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997).  Importantly, that deference is amplified by § 2254(d), which "adds a layer of respect for a state court's application of the legal standard."  *Id.*  Accordingly, "only a clear error in applying *Strickland* would support a writ of habeas corpus."  *Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2002) (internal citations, quotation marks, and alterations omitted).

**B.     Trial counsel was not ineffective for declining to present an alibi defense after making a good-faith determination that the proposed alibi witnesses would give perjured testimony.**

On postconviction appeal, the state appellate court rejected petitioner's *Strickland* claim after reasonably determining that, based on the evidence presented during postconviction proceedings, trial counsel believed in good faith that petitioner's four alibi witnesses would falsely testify that petitioner was with them when the shooting occurred. Given that amply supported factual finding, the state appellate court reasonably applied *Nix v. Whiteside*, 475 U.S. 157 (1986) — which holds that an attorney does not perform deficiently when he declines to present false evidence — and held that petitioner could not demonstrate that counsel's performance was professionally unreasonable. *See* Exh. L at 5-6. Therefore, habeas relief is barred by § 2254(d). *See Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003).

In holding that trial counsel was not ineffective for declining to present testimony he believed in good faith to be perjured, the state appellate court found as follows:

> At trial public defender David Kliment represented [petitioner]. Kliment did not call any alibi witnesses to testify at trial although Kliment had asserted an alibi defense in his discovery answer. However, in another trial (97 CF 2326) regarding another shooting that occurred later the same night as the instant shooting, [petitioner] presented four alibi witnesses, Sonia Delatorre and her sister, Elizabeth Delatorre, George Gamboa and Ramiro Sandoval. This trial ended in a hung jury.

* * *

At the hearing on [petitioner's] postconviction petition, [petitioner] testified that his alibi covered the times for both shootings; that he had been at the Delatorre house when both shootings occurred. [Petitioner] repeatedly told Kliment about his alibi and Kliment kept saying he was looking into it. Kliment never told [petitioner] that he had spoken with his alibi witnesses. [Petitioner] spoke with the alleged alibi witnesses except for Elizabeth Delatorre and they said they would testify for him at trial but they were not contacted by Kliment. Elizabeth Delatorre was living in Arizona at the time of the hearing. [Petitioner] denied telling Kliment that he had been at the shooting in the instant case.

* * *

Private investigator Arnold Castillo testified consistently with his affidavit filed in support of the postconviction petition [that Gamboa and Sandoval would support petitioner's alibi]. Sandoval testified, through an interpreter, that nobody from the Kane County Public Defender's office had contacted him prior to trial but he was in the courthouse during the trial. Sandoval acknowledged that he previously testified that he had been with [petitioner] during the shooting that led to the charges in the other shooting. However, Sandoval also stated that he and [petitioner] were with the Delatorre girls during both shootings.

Defense counsel David Kliment testified that he reviewed the police reports and witness statements including taped statements given by Sonia Delatorre. He also reviewed the transcripts from the testimony given in the other case [97 CR 2326] by Gamboa, Sandoval and the Delatorre sisters. He did not recall reviewing the transcripts of the bond reduction hearing in the other case. When asked whether he knew that the prior case ended in a hung jury Kliment stated, "I'm sure I did know." Kliment also testified that he had investigators interview potential witnesses although he had no written reports. He spoke with [petitioner] about potential alibi witnesses on at least "a couple of occasions." Kliment filed a supplemental discovery answer asserting an alibi defense

-23-

and listed the potential alibi witnesses.  But when he
spoke to [petitioner] later he told [petitioner] that he
didn't like the alibi defense because "putting on a bad
alibi defense is worse than putting on no defense at all,
because it makes you look like you're trying to lie if the
alibi is going poorly."  Kliment told [petitioner] that
"putting on any kind of defense was a matter of trial
strategy" and that [petitioner] would be "better off"
without an alibi defense.  Kliment explained that the alibi
witnesses could not account for the entire 90-minute
period between the shooting underlying the charges in the
first case (the shooting in the instant case) and the second
shooting [that led to charges in 97 CF 2326].  Kliment
stated, "I think they tried to but when you piece it
together, there were gaps and so forth, and I'm trying to
remember back a long time, remember, but there were
problems with it."

Kliment also testified that [petitioner] made remarks
which made it "impossible" for him to raise the alibi
defense.  According to Kliment, [petitioner] said "that the
witnesses were there to testify for him, they know what to
say, but that he was there at the shooting, he just wasn't
involved."  Upon hearing that, Kliment became concerned
"that the alibi witnesses would perhaps not testify
truthfully."  Kliment stated that the instant shooting and
the time of the shooting was the topic of conversation
when [petitioner] made the statement so he did not need
to explore the statement any further.  Kliment believed
that he was "barred from using" the alibi defense in light
of [petitioner's] remark.

Exh. L at 1-4.

> 1.    **The state courts' rejection of petitioner's *Strickland*
> claim was based on the amply supported — and therefore
> reasonable — factual determination that trial counsel
> believed in good faith that the alibi witnesses would
> testify falsely.**

In rejecting petitioner's claim that trial counsel was ineffective for failing to

present an alibi defense, the state appellate court emphasized that the record of the

postconviction hearing amply supported counsel's determination that petitioner's alibi witnesses would give perjured testimony. *See* Exh. L at 6. Because that factual determination was, at a minimum, objectively reasonable, § 2254(d)(2) forecloses relief. *See Hall v. Washington*, 106 F.3d 742, 752 (7th Cir. 1997) (state court's decision may be reviewed for reasonableness under subsection (d)(2) "if it is better viewed as a pure question of fact").

> **i.    Because petitioner's claim is predicated on a challenge to credibility findings made by the state courts, it must fail.**

Petitioner's ineffective assistance claim turns on whether he admitted to trial counsel that he was present during the shooting. At the postconviction evidentiary hearing, the state trial court heard conflicting testimony on that issue — counsel testified that petitioner admitted he was present during the shooting, and petitioner denied having done so. *Compare* Exh. T at 472-73, 493-94 (trial counsel's testimony) *with* Exh. U at 1270-71 (petitioner's testimony). However, as the state appellate court recognized, the trial court resolved the credibility contest in trial counsel's favor: "[I]t was within the trial court's purview to weigh the testimony and determine the credibility of witnesses. The finding of the trial court implies that it believed that Kliment made a good faith determination that [petitioner's] alibi witnesses would lie if called to testify." Exh. L at 6.

Petitioner's *Strickland* claim is a direct challenge to the credibility findings made by the postconviction trial court, and affirmed on appeal. But the state trial court's factual determinations — such as its findings that trial counsel's testimony

was credible, and petitioner's was not — enjoy a presumption of correctness unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Yet petitioner offers no evidence, let alone clear and convincing evidence, to support his claim. Plainly, then, petitioner's ineffective assistance claim fails under subsection (d)(2) because federal habeas courts do not sit to second-guess state court credibility assessments. *See*, *e.g.*, *Rice*, 546 U.S. at 338-39; *see also id.* at 977 (Breyer, J., concurring) ("The trial judge is best placed to consider the factors that underlie credibility: demeanor, context, atmosphere."); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"); *Amerson v. Farrey*, 492 F.3d 848, 852 (7th Cir. 2007) ("The state court was presented with an issue on collateral review of whether to credit the original statements and the trial testimony or the later recantation. The state court decided to credit the original statements and trial testimony and Amerson has failed to give us a reason to disregard this decision.").

> ### ii. The state courts' determination that counsel believed in good faith that the alibi witnesses would give perjured testimony was amply supported by the record, and therefore reasonable.

Petitioner's subsection (d)(2) claim fails for yet another reason: as the state appellate court found on postconviction appeal, there was "ample evidence to support the trial court's finding that defense counsel Kliment had a good faith belief that [petitioner's] alibi witnesses would lie if called to testify." Exh. L at 5. The

primary evidence was counsel's testimony that: (1) petitioner had admitted being

"at the scene of the shooting;" and (2) when petitioner made that admission, the

"topic of conversation was the shooting at issue and the time of the shooting," rather

than the shooting that occurred later in the evening and led to criminal charges in

Kane County case number 97 CF 2326. *Id.* at 5-6. Having heard the conflicting

testimony on that issue, the state trial court reasonably determined that counsel

believed in good faith that petitioner's proposed alibi witnesses would testify falsely.

Nevertheless, petitioner faults counsel (as he did on postconviction appeal)

for "not ask[ing] any follow up questions to explore exactly what [petitioner] had

meant when [petitioner] supposedly said that he had been at the scene." *See* Mem.

at 12.[5] Had counsel asked such questions, petitioner insists, petitioner would have

told counsel that he was *not* present when Jermaine Lambert, Alonzo Matthews,

and Tara Harris were shot at approximately 8:50 p.m. Rather, what petitioner

meant was that he had been *arrested* near that location at approximately 10:15 p.m.

*Id.* at 12-13. That argument is meritless, as defense counsel testified

unambiguously at the postconviction hearing that, because he and petitioner were

discussing the shooting at 309 East New York when petitioner made the admission,

there was no need to ask any "follow up questions."

---

[5] The memorandum of law attached to the instant petition is, in large part, a
handwritten reproduction of petitioner's opening brief on postconviction appeal,
submitted to this Court as Exhibit I to respondent's Answer.

At the postconviction hearing, the following exchange took place between the

prosecutor and petitioner's trial counsel:

> Q:     And what specifically did [petitioner] say that
>        made it impossible for you to put on an alibi
>        defense?
>
> A:     He told me that the witnesses were there to testify
>        for him, they know what to say, but that he was
>        there at the shooting, he just wasn't involved.
>        When he told me that, it made me believe that the
>        alibi witnesses would perhaps not testify truthfully.
>
> Q:     And when [petitioner] said he was there at the
>        scene of the shooting, was he referring to the
>        shooting that he was charged with in this murder?
>
> A:     That was the topic of conversation.

Exh. U at 472-73.

Later during the hearing, trial counsel described in more detail the context of

the conversation in which petitioner admitted being present at the shooting:

> Q:     Once [petitioner] told you he was at the scene of
>        this shooting, did you make the inference that he
>        couldn't possibly have been with the alibi
>        witnesses?
>
> A:     That's -- that's the question [petitioner's
>        postconviction attorney] never asked, is yeah, I
>        knew that he was at the scene or near the scene of
>        the shooting at 10:30 later on that night, that was
>        pretty apparent, but the context of our conversation
>        was the shooting, the time of the shooting, and so
>        when he said to me "I was there," it wasn't in the
>        context of later on when he was arrested.  It was in
>        the context of at the time of the shooting, and that's
>        why I didn't explore any further.

Exh. U at 493-94.

In light of trial counsel's testimony that petitioner admitted being present as he and petitioner discussed the 8:50 p.m. shooting — testimony that the state trial court credited — petitioner's argument that counsel needed to clarify petitioner's allegedly ambiguous statement has no merit.  The state appellate court reasonably found that trial counsel had a good faith belief that petitioner's alibi witnesses would give perjured testimony if called to testify, and habeas relief is therefore barred by § 2254(d)(2).

> **2.    The state appellate court's holding that counsel did not perform deficiently was neither contrary to, nor an unreasonable application of, *Strickland* and *Nix*.**

Habeas relief is also barred by § 2254(d)(1), since the state courts did not contradict or unreasonably apply clearly established federal law in adjudicating petitioner's *Strickland* claim.

First, when the state appellate court held that it was professionally reasonable for counsel not to present petitioner's false alibi defense, the court correctly identified and articulated the governing *Strickland* standard.  *See* Exh. L at 5.  For that reason, the state appellate court's decision was not contrary to clearly established Supreme Court precedent.  *Bell*, 535 U.S. at 694.

Second, the state appellate court reasonably applied *Strickland* and *Nix* in holding that counsel's performance was not deficient.  *Strickland* placed the burden squarely on petitioner to demonstrate that counsel's performance fell below an objective standard of reasonableness.  *United States v. Jackson*, 103 F.3d 561, 575

(7th Cir. 1996). Here, the record before the state trial and state appellate courts clearly demonstrated that counsel's performance was reasonable, since counsel's decision not to present the alibi defense was based on his good faith determination that petitioner's alibi was false. In light of that amply-supported factual determination, *see* Exh. L at 5-6, the state appellate court's holding that trial counsel did not perform deficiently in declining to present perjured testimony was, at the very least, an objectively reasonable application of *Nix v. Whiteside*.

The defendant in *Nix* was charged with murder, and his defense at trial was based on his proposed testimony that he (1) reasonably believed that the victim had a gun; and (2) he therefore killed the victim in self-defense. *See Nix*, 475 U.S. at 160. Although defendant had consistently told his attorney that he had never seen the victim holding a gun, defendant claimed for the first time, one week before trial, that "he had seen something 'metallic' in [the victim's] hand." *Id.* at 161. Counsel refused to allow defendant to so testify, and counsel indicated that he would advise the court of defendant's intent to commit perjury and withdraw from his representation if defendant insisted on testifying falsely. *Id.* The state trial court found, and all subsequent courts agreed, that, on those facts, "trial counsel believed with *good cause* that [defendant] would testify falsely." *Id.* at 163 (emphasis added). After defendant was convicted of second degree murder, he petitioned for federal habeas relief on the ground that counsel was ineffective for refusing to

-30-

permit defendant to testify about seeing the metallic object in the victim's hand. *Id.*
at 162-63.

The Supreme Court in *Nix* rejected that claim, holding that defendant was
not denied the effective assistance of counsel when his attorney refused to cooperate
in the presentation of false evidence. *See* 475 U.S. at 171. To hold otherwise, the
Court reasoned:

> would require an attorney to remain silent while his
> client committed perjury [and would be] wholly
> incompatible with the established standards of ethical
> conduct and . . . contrary to professional standards . . .
> The position advocated by [the government], on the other
> hand, is wholly consistent with the . . . standards of
> professional conduct and law, with the overwhelming
> majority of the courts, and with codes of professional
> ethics. Since there has been no breach of any recognized
> professional duty, it follows that there can be no
> deprivation of the right to assistance of counsel under the
> *Strickland* standard.

*Id.* at 174-75.

*Nix* applies in this case. Petitioner urged defense counsel to call four alibi
witnesses who would testify that he was at the Delatorre house when the shooting
occurred. However, petitioner unambiguously admitted to defense counsel that he
was present during the shooting, and counsel necessarily concluded that petitioner's
alibi witnesses would testify falsely. *See* Exh. T at 472-73, 493-94. And like the
state trial court in *Nix*, the state appellate court here determined that defense
counsel was well justified in his determination that petitioner's proposed alibi
witnesses would testify falsely. *Compare Nix*, 475 U.S. at 163 (defense counsel had

-31-

"good cause" for believing that defendant would testify falsely), *with* Exh. L at 6 (postconviction trial court's finding that counsel had good faith belief that alibi testimony was perjured was amply supported by the record).[6]  Therefore, the state appellate court reasonably applied *Nix* in holding that counsel's alleged "failure" to

---

[6]  As noted above, petitioner argues that defense counsel was required to ask further questions in order to clarify petitioner's supposedly ambiguous admission that he was present during the shooting.  *See* Mem. at 11-13.  To the extent that argument could be construed as a claim that *Nix* required counsel to have a greater degree of certainty that petitioner's alibi defense was false before he declined to present that defense, such a claim would be barred by § 2254(d)(1).

No decision of the United States Supreme Court specifies what degree of certainty counsel must have that a client will commit perjury before the attorney may decline, pursuant to *Nix*, to present evidence that the lawyer believes is perjured.  *See*, *e.g.*, *People v. Calhoun*, 815 N.E.2d 492, 1078-79, 1084-85 (Ill. App. 2004) (noting that Supreme Court has not decided the issue, discussing five different standards applied by courts addressing *Nix* claims, and collecting cases).  Indeed, *Nix* itself observed that the lower federal courts had adopted divergent standards on this issue, but the Court did not specifically resolve that question.  *See Nix*, 475 U.S. at 159 n.1.  In these circumstances, where the Supreme Court's "case law give[s] no clear answer to the question presented, let alone one in [the prisoner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law" when it rejected petitioner's *Strickland* claim after determining that defense counsel's good faith belief that the alibi testimony was perjured was amply supported by the record.  *See Wright v. Van Patten*, 128 S.Ct. 743, 747 (2008); *see also Calloway v. Montgomery*, 512 F.3d 940, 944-45 (7th Cir. 2008) (habeas relief unavailable on claim that non-capital petitioner was entitled to lesser-included offense instruction, given that Supreme Court had declined to address issue in a prior opinion) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006)).

Moreover, to define for the first time in this federal habeas action what degree of certainty *Nix* requires that an attorney have before the attorney declines to present false evidence would violate *Teague v. Lane*, 489 U.S. 288 (1989).  The fact that state courts and the lower federal courts have adopted at least five different standards for assessing *Nix* claims demonstrates that any such rule would be "new," and thus *Teague*-barred.  *See Rodriguez v. Chandler*, 382 F.3d 670, 673 (7th Cir. 2004).

present the alibi defense was not constitutionally deficient.  *See Nix*, 475 U.S. at

171, 174-75.  The state appellate court's judgment was, at a minimum, "minimally

consistent with the facts and circumstances of the case," and habeas relief should be

denied.  *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006).

>    **3.    The state trial court reasonably held that petitioner was
>            not prejudiced by counsel's failure to present an alibi
>            defense.**

Finally, petitioner's *Strickland* claim fails because the state postconviction

trial court's holding that petitioner could not demonstrate that he was prejudiced by

counsel's failure to present the alibi defense was, at a minimum, objectively

reasonable.  Because the state postconviction trial court was the last state court to

rule on the merits of the prejudice prong of petitioner's *Strickland* claim, that

decision is the relevant one for purposes of this Court's habeas review.  *Simpson v.

Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006) ("The relevant decision for our purposes

is the decision of the last state court to rule on the merits of the petitioner's

claims."); *cf. Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("our review is not

circumscribed by [§ 2254(d)(1)] with respect to prejudice, as *neither* of the state

courts below reached this prong of the *Strickland* analysis") (emphasis added).

In holding that petitioner was not prejudiced by defense counsel's failure to

present the alibi defense, the state trial court relied upon the strength of the

prosecution's case against petitioner, and the fact that one of the proposed alibi

witness's testimony at the evidentiary hearing "lacked any credibility."  *See* Exh. V

at 1318-19. However, "*as a matter of law*, counsel's conduct complained of here" —

the refusal to present perjured testimony — "cannot establish the prejudice

required for relief under the second strand of the *Strickland* inquiry." *Nix*, 475 U.S.

at 175 (emphasis added). *Nix* holds that a criminal defendant has no valid claim

that his attorney's refusal to cooperate with him in presenting false evidence

resulted in *Strickland* prejudice:

> Whether he was persuaded or compelled to desist from
> perjury, defendant has no valid claim that confidence in
> the result of his trial has been diminished by his desisting
> from the contemplated perjury. Even if we were to
> assume that the jury might have believed his perjury, it
> does not follow that [defendant] was prejudiced.
>
> * * *
>
> [Defendant's] attorney treated [defendant's] proposed
> perjury in accord with professional standard, and . . .
> [defendant's] truthful testimony could not have prejudiced
> the result of his trial[.]

*Id.* at 175-76.

The state postconviction trial court's holding that petitioner could not

demonstrate that he was prejudiced by defense counsel's refusal to put on a false

alibi defense was, at a bare minimum, a reasonable application of *Nix*. Petitioner's

argument that there was a reasonable probability of acquittal had counsel

presented an alibi defense, for then the jury may have discredited the two witnesses

who testified at trial that petitioner was the shooter, is beside the point, for *Nix*

bars petitioner from arguing that he was prejudiced by his attorney's refusal to

present the false alibi evidence. *See id.* at 175-76 (defendant "has no valid claim

that confidence in the result of his trial has been desisting from the contemplated perjury"). Accordingly, the state postconviction trial court's holding that petitioner was not prejudiced by the failure to present the alibi defense was objectively reasonable, and habeas relief is barred by § 2254(d)(1).[7]

Petitioner might reply that § 2254(d)(1) does not circumscribe this Court's review of *Strickland*'s prejudice prong because the state appellate court on postconviction appeal — the last state court that rendered a decision on *Strickland*'s performance prong — did not address the prejudice prong. Although *Wiggins* supports respondent's position that the state trial court's judgment is entitled to (d)(1) deference, *see Wiggins*, 539 U.S. at 534 (where *no* state court had addressed prejudice prong, Supreme Court addressed question *de novo*), respondent has found no case squarely on point. But this Court need not resolve the issue because the result is the same under a *de novo* standard: because the evidence upon which

---

[7] For purposes of § 2254(d)(1), it is no matter that the state postconviction trial court did not rely on *Nix* in holding that petitioner failed to show *Strickland* prejudice. "AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even correct decision by a state court." *Coulter v. McCann*, 484 F.3d 459, 470 (7th Cir. 2007). The Seventh Circuit has consistently held that it is the bottom-line result reached by the state court, not its reasoning, that enjoys deference under § 2254(d)(1). *See Hough v. Anderson*, 272 F.3d 878, 897-98 n.7 (7th Cir. 2001) ("Under AEDPA, it is a state court's resolution of an issue, as opposed to its reasoning process, that must be treated with deference."); *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997) (rejecting proposition that federal habeas courts can "insist not only that the [state court's] outcome be reasonable in relation to the evidence but that the [state court] articulate a rational path connecting the law and the evidence to the outcome"). Thus, the reasonableness inquiry focuses on the state trial court's resolution of petitioner's *Strickland* prejudice claim — *i.e.*, its judgment that *Strickland* did not require a new trial — not its rationale for reaching that result.

petitioner relies in attempting to show prejudice was perjured, his prejudice argument fails "as a matter of law." *Nix* 475 U.S. at 175.  Under *Nix*, petitioner "has no valid claim that confidence in the result of his trial has been diminished by his [attorney's] desisting from the contemplated perjury [of the proposed alibi witnesses]."  *See id.* 474 U.S. at 175-76.

## CONCLUSION

For the reasons set forth above, this Court should deny the instant petition for writ of habeas corpus.

May 29, 2008                              Respectfully submitted,

                                          Lisa Madigan
                                          Attorney General of Illinois

                        By:     s/ Michael R. Blankenheim
                                Michael R. Blankenheim, Bar # 6289072
                                Assistant Attorney General
                                100 West Randolph Street, 12th Floor
                                Chicago, Illinois 60601-3218
                                Telephone: (312) 814-8826
                                Fax: (312) 814-2253
                                Email: mblankenheim@atg.state.il.us

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2008, I electronically filed respondent's **Answer To Petition For Writ Of Habeas Corpus** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, and that on the same date I mailed by United States Postal Service the same to the following non-registered party:

Armando Amaya, K75877
Tamms Correctional Center
200 East Supermax Road
P.O. Box 2000
Tamms, Illinois 62988

s/ Michael R. Blankenheim
Michael R. Blankenheim, Bar # 6289072
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
Telephone: (312) 814-8826
Fax: (312) 814-2253
Email: mblankenheim@atg.state.il.us