Original

IN THE UNITED STATE DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS, EASTERN DIVISION.

United States of America ex rel.  )
Armando Amaya,                    )
                    Petitioner    )      07 C 6793
v.                                )
                                  )      The honorable
Ken Bartley,                      )      John W. Darrah
Warden, Tamms Corr. Cent.         )      Judge Presiding
                    respondent    )

FILED
JUN 2 4 2008  aw
6-24-2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

REPLY BRIEF AND ARGUMENT FOR PETITIONER PETITION FOR
WRIT OF HABEAS CORPUS

1) Respondent in paragraph 19 of There answer, makes the argument that "petitioner did not Indicate when (if at all) he placed his petition in the internal mailing system at Tamms corr. cent." (Att.Gen.Br. At 6) On the contrary — petitioner did field a Proof / Certificate of service attache to the petition of Federal Habeas Corpus. Petitioner Field this document in the United State for the Southern District on October 12, 2007 by placing it in the Tamms C-Max mail — "please take notice that on the 10-12-'07, I have place the document listed below in the institutional mail at Tamms corr. cent., to the parties listed above for mailing through the United State postal service." See Exh 1  and original petition

2) Factual Background (pg. 9 of Resp. Br.) Quoting the respondent petition — "The state court's factual findings are presumed correct" and the "petitioner has the burden of rebutting the presumption by 'clear and convicing evidence'."

The respondent in their Factual Background, Travializes the numereous flaws in the testimony given by Shayla Johnson and Nicole Pearson. For example the respondent acknowledge that both women had seen the petitioner earlier before the shooting in a white car. (Resp.Br. at 9-11)

1 of 15

Shayla testify that she had seen petitioner earliear before the shooting in a white car with two other Hispanic men in a white car four-door celeberty or centery with a red stripe "Two of the car's accupants hung out the car windows yelling 'King love 'GDK' and King rule". (Resp Br at ¶0 & Trial Transcrips at C651-653 & 662

Nicole Pearson, whom Johnson testified was walking with her at this moment, the evening of Oct. 29, 07 (see Trial Trans at C655 & 661) Testify opposite of Johnson. Nicole Pearson testified that she to had seen petitioner in a white car, with two other man, earliear that evening of the shooting, "That she saw the petitioner in a white car but did not here them say anything" Oppisite of what her friend Shayla testified to "whom was walking with her at this moment" (see Trial Trans. at C000682, C000 689-690)

Shayla also testified that (Almost two months later) on December 19, 1997, she went to the police department with "Nicole Pearson" to file a complain about an unrelated incident. subsequently on February 4, 1998, she attended a line up at the county jail, when she identified the petitioner, (Trial Trans at C000656) (& 660)

On cross-examination, the witness admitted speaking to "other" pearsons about the shooting incident prior to discussing the matter with the police. That she talk with her friend, Nicole Pearson about the incident and that both went to the Aurora Police Department together in December. She described the shooter to the police as being 5'4" tall and weighting 130-140 pounds, "A garbage can was located between the witness and the pearson who fire the shoots. (Trial Trans at C665-666)

Nicole, also testified that following the shooting, she did not stay in the area and did not talk to the police. However, she did speak to the police when she went to the police department a couple of months later with her friend "Shayla Johnson". In Februrary 1998 she viewed a line-up at the county jail and identify petitioner, she denied being a gang member but admitted associating with friends who were Gaster Deciples. (Trial Trans. at C682-655 & 688)

On cross-examination, she admitted wearing Gaster Deciples gang colors and that she was located in Gaster Diciples territory that night. Since it was dark in the area of the shooting she could not see the face of the pearson approching from the street, while he was located under a walkway she noted that the shooter was

2 of 15

acting alone." Jermaine Lambet, was a friend of hers. Also on cross-examination, Nicole testified contrary of Shayla (about speaking to her about the night of the incident). Nicole, "she denied speaking with Shayla Johnson prior to talking to the police, even though they where living together at that time," when first discosing the incident with the police at the line-up, "she stated that 'Scarecrow' was not the gunman". Trial Trans. at C 689-701 & C000702-709)

The respondent totally inores the fact that Pearson ultimately identify the petitioner only after the police asked her leading question. (Trial Trans. 702-704) The responded acknowledges that "Nicole admitted that her friend Shayla Johnson thought that the petitioner was the shooter, and that Shayla told Nicole that the petitioners name was "Scarecrow". (Respn. Br. at 11) but neglects to mention two other important facts: (1) Pearson initially denied that she had talk to Johnson about the incident; and (2) Pearson eventially conceded that Johnson had told her that she (Johnson) thought that petitioner was the shooter. (Trial Trans. at C698-700 & C711)

The respondent exaggercates the strenght of the out-of-court identification. The respondent admitted that Pearson initially said tha the petitioner was not the shooter, but then claims, that she didn't think petitioner had been the shooter because "he had gained weight since the shooting." (Respn. Br. at 11) Pearson testifged that she told the police that "the pearson that did the shooting were [sic] skinnier than the line-up — than the guy in the line up". (Trial Trans. at C708-709) Althoug Pearson did not estimate the shooters weight other witnesses said that he weighed any where from 130-145 pounds. (Amayu 321 ILL. APP. 3d 923, 748 N.E. 2d 1251 2nd Dist. '01) Although Pearson said that she could identifed petitioner because his face [was] the same (Transc. at 709) her idetification is questionable, given the improbability of the petitioner having increased his weigh by at least 24% in less then six months. At the minumum, the petitioner would had have to gained six pounds per Month.

Reply to respondents III argument at 14.

Petitioner acknowledge that he is currently appealing the judgment of the Circuit Court of Kane County denying him leave to file his second post-conviction petition, in which petitioner rais newly discover evidence that could not have been raised earlier.

The successive petition raises the argumental claim that prosecutors violated petitioners right of Due process by failling to disclose exculpatory statement made by Sharona C. Weakly.

The petitioner is appealing the state trial court decision, and with all respect, because the trial court was wrong in stating that the claim could have been raised earlier.

The reason that petitioner was unable to raise the issue in question was because Ms. Weakly Police statement was place under Incident 97-24443 which is case 97 CF 2326, the attempt Murder trial.

Ms. Weakly statement was for this case 98 CF 535 which is Incident 97-24441 a whole different Incident (see Exh. 2-5)

Defendant (Petitioner) enter in suport as exhibits, his whole case trial transcrips, Discovery reports, A Drawing of the area map (By petitioner), The front pg of Both Incidents, and Ms. Weakly's police report.

Respondent has made the argument that "It is doubtful that petitioner could show (1) "good cause" for failing to exhaust his Brady Claim before he field the instant federal petition; or (2) that his Brady claims is not 'plainly meritless', as it was not - and connot be- considered on the merits by the state courts in an Improperly filed successive post-conviction petition.

Petitioner rebutals this argument for the reasons that follow;

There is "Good Cause" as to why petitioner was unable to exhaust his Brady Claim... Petitioner was unaware of evidence that Ms. Weakly made a statement to the Aurora Police on the night of 10-29-'97 - "Her statement was mark and place in Incident 97-24443 The attempt murder Incident to which she is not a witness too. (Exh 2 & 6)

Ms. Weakly, on the night of Oct. 29, 1997 Gave a statement for this case (a Homicide at 309 E New York St) 98 CF 535, Incident 97-24441 (see Exh 3 & Exh 4) which defendant was place on trial for. And not for the incident her supplemental police report is mark as 97-24443, case 97 CF 2326 see.

That because of that, Petitioner never had any knowledge of crucial evidence, that could and would have help petitioner show that the state witnesses were not being truthful, and that some one else committed the crime... Because petitioner was not disclosed Weakly's statement in the actual Incident (97-24441) or in the discovery report, petitioner could have not been aware of her statement in which she contradicts the states entire case, along whit their exhibits and witnesses.

for the reason that Weakly's statement was place in the wrong incident and never disclose in the discovery report, petitioner was unable to raise the evidence in her statement in earlier petitions or at trial (see, comom law records at C22 & C41-C45, C88-89, C93-95, 98, &C107-108)

The claim of due process is not "meritless". The evidence in Ms. Weakly statement would have change the outcome and made a diffrence at the trial, base on the fact that — she is an eyewitness whom witness the shooter come up infront of her and started shooting. She tells the police that — "She was not sure if the subject was Mexican or Black" But! "That [he] was very light skinned and had no facial hair — that when the subject finish firing the gun, he pause and put the gun away and ran across new York st towars the Nursing home and in between some houses Northbound of the inciden. (Exh 2)

Weakly's statement whould have brought doubt to the state case, there case was base that the subject [is] ran southbound of the incident across GALENA Blv. Towards the LINCON LAUDROMAT, into a white car that was facing south, and that the subject had a goatee. (Resp. Br at 12          and Amaya 748 N.E 2d 1251)

Her statement controdicts, Tracy Johnson testimony to the jury, whom the jury use to reach their verdic, when they requested and was given Mr. Johnson trial transcripts testimony. see Trial Trans. at C1040-1045

Mr. Johnson testimony at trial was that he was standing somewhere at Galena Blv. (see Exh 5   ) when he hears the shots, and seen three people running across Galena Blv Towards the Lincoln Laudromat into a white car that was Facing southbound (see Amaya 748 N.E 12.54 and Resp Br. at 12) Mr. Johnson claims he was sure the defendant (petitioner) was one of the subjects.(see Amaya 748 N.E 1254)

Weakly's statement also challenge the prosecution exhibit 1 and 21 which is a diagram of the area of incident 97-24441. That the prosecution use to point out the location of the Lincoln Laudromat and Galena Blv. see (Trial Transcp. at (Amaya 748 N.E 1254 & C793-794)

She would have also controdicted the testimony by officer Hilgenber surgent Langston, and officer Wolter and Exhibit 40-43 and That they use to corraboote their case, that the subject had facial hair and that the shooter ran towards the Lincoln Laundromat. see. Trial Trans. at (C571-601, C800-801 & C813, C859, C873-882)

Her testimony would have also controdicted the state witness william McCalister that they had testified that the subject had facial hair (see. Trail Trans. at C752 & 756)

5 of 15

Judge Hackett, also made his finding of the accountability instruction base on Tracy Johnson testimony. (see Trial Trans. at c927-936) petitioner for the reasons above ask leave to apply the stay and obeyance, intill the actual successive petition is exhaust in the lower [s] Court.

### Reply to Respondent IV argument at 17

Respondent argument is that pititioner's claims have no merit, Because petitioner alegily admitted being present during the shooting at 309 East New York street, to his trial attorney. That Kliment, after hearing petitioner's admission, trial counsel became concerned "That the alibi witnesses would [Perhaps] not testify truthfully", and that it became "Impossible" for him to put an alibi defense.

"Trial counsel fail to take the few necessary steps to identify and interview the alibi witnesses. If he would have he may have frame a more favorable view of petitioners veracity... Trial counsel testify that the alibi witnesses would, [Perhaps] not testify truthfully" (Resp Br at 17) —

"Perhaps not testify truthfully!" is a questionable phrase, when it leaves room for doubt in the assumption. Doubt that Mr. Kliment had of how the alibi may had come across on the stand. The only way trial counsel could have clear this assumption would have been by interview the alibi witnesses.

Illinois Supreme Court Rule of Professional conduct 3.3 (a)(4) "In appearing in a professional capacity before a tribunal, a lawyer shall not offer evidence that the lawyer [KNOWS] to be false".

Even though trial counsel testified that there was an investigation done by the investigators listed on the discovery report.

By the state:

    Kliment: Q And did you have an investigator interview potential witnesses?

    A) I did. There were no reports prepared by any investigators.

    Q) And your investigators, were they listed as potential witnesses in the trial?

    A) Yes

(see: post-conviction transcrips at c000468)

By petitioner's post-conviction counsel

Q) Now, you said that investigators had been participating in the investigation in this case
A) Yes
Q) Who did your investigators interview?
A) I don't know. As I sit here now, I don't know, and there is nothing in my file to indicate who they talk to, if anyone
Q) Which investigators were involved in interviewing people
A) I don't know. It's listed on an answer to discovery in the file. On one of the answers I believe I listed one or two investigators.
(see: post-conviction transcripts at c000487)

One of trial counsels investigator was Arnoldo Castillo (see trial common law records at c99) Castillo testify contrary of Mr. Kliment That there was to his knowledge no investigation into the witnesses of the petitioner, case prosecuted by the state under 96 CF 535, done specifically by him. see Peti Mem at 6 and post-convictio post conviction transcripts at R 1243-44)

"Kliment never ask him to interview anyone." The respondent in there answer cites <u>Nix V Whiteside</u> 106 S.ct 988 to justify Kliments actions. That case should not control the issue at bar, because Whiteside was decided in the frame that Whiteside lawyer Gary L Robison interviewed Whiteside companions who were present during the stabbing. see Nix v. Whiteside 106 S.ct 988

Quoting ILL. Sup. Court Rule 3.3.(a)(4) "A Lawyer shall not offer evidence that the lawyer [knows] to be false."

Trial counsel "assume" that the alibi would testified untruthfully in this case, without interviewing them. (Perhaps not testify untruthfully). Perhaps leave room for doubt — reasonable doubt.

Trial counsel testify untruthfully when he said the investigators whom did the investigation were listed in the discovery report — That same investigator testify that he never did any investigation into petitioners case.

This shows that Kliment fail to investigate or interview the facts of the alibi defense by leaving an open door for doubt

"Knowing" is one thing — Thinking "Perhaps" is another thing!

This court should for the reasons above look into petitioners case, and find that it was unreasonable and grant petition for habeas relief.

## ARGUMENT

THE TRIAL COURT ERRED BY DENYING THE DEFENDAT'S POST-CONVICTION PETITION, WHERE THERE RECORD SHOWS THAT MR. KLIMENT'S DECISION NOT TO RAISE THE ALIBI DEFENSE WAS BOTH UNREASONABLE AND PREJUDICIAL.

Counsel's decision must not be "unreasonable" under the circumstances People v. Flores: 128 ILL. 2d 66, 107 538 N.E. 2d 481, 498 (1989). Here, Mr. Kliment's decision to forgo the alibi defense was unreasonable because he "assumed" without adequate inquiry, that the petitioner had admitted being at the scene of this offense.

Mr. Kliment's subjective confidence in his own conclusions is irrelevant. What matters is whether his confidence was objectively warranted.

The respondent cited, ILL. sup. court Rules of Professional Conduct 3.3 (a)(4) that, "[I]n appearing in a professional capacity before a tribunal, a lawyer shall not offer evidence that the lawyer knows to be false" (The Key word enbeded in the rule is [know] to be false!.)

Mr. Kliment was ethically bound to represent his client zealously, and counsel must keep that latter obligation in mind when attempting to determine wheter the client seeks to present false testimony. People v. Simac: 161 ILL 2d 297, 309, 641, N.E. 2d 416, 422 (1994); People v. Calhoun; 351 ILL App 3d 1072, 1082, 815 N.E 2d 492, 500 (4th Dist. 2004). In this case at bar, Mr. Kliment acknowledge that he did not ask the defendant any follow-up questions or otherwise attemp to determine precisely what the defendant meant when he allegedly admitted being "there at the shooting" (see post-conviction R 1204-05) Given the unusual factual circumstances—The defendant was arrested at 10:31 p.m In connection with an unrelated shooting that had occurred just minutes earlier at the location not far from the site of the arrest (see., petitioner Habeas corpus statement of Fact)

It was incumbent upon Mr. Kliment to ask the defendant to clarify exactly what he ment. "Mr. Kliment should have asked the petitioner to clarify what he meant because there was no apparent reason for petitioner to sabatage his case.

Trial counsel testified that on the 21st of January he gets into an argument with petitioner, and the petitioner allegedly says something to which makes him think that ethically he can't call the alibi.

8 of 15

witnesses. Yet! the next day, on the 22Nd of January Kliment files an alibi defense "He files a list of witnesses, basicaly saying I don't know where they are because all the addresses are unknown" (But that doesn't make any sense, either) (see P.C. Transcripts at C480 - C486)

The respondent make the argument that the trial court held that Petitioner was not prejudiced by trial counsel's failure to present the alibi defense, and that on post-conviction appeal state appellate cour affimed, holding that there was "ample evidence" to support the trial courts finding that defendant counsel had a good faith belief that petitioner alibi witnesses would lie if called to testify at trial (see Resp. Br. at 15)

In this case at bar, there is <u>no</u> evidence, or was there any evidence presented to show that the alibi witnesses would have testify untruthfully at all, the alibi testimonies show other wise see pet. Mem at 10-12

The respondent is arguing that "The state appallate court's holding that counsel did not perform deficiently was neither contrary to nor an unreasonable application of Strickland and Nix.

"<u>Nix v. Whiteside</u> should not control the question at hand." for the following reason: Quoting, <u>Nix v. Whiteside</u> 106 s.ct 966

"Whiteside was charge with murder and when counsel was appointed he objected to the lawyer initially appointed claiming that he felt uncomfortable with a lawyer who had formerly been a prosecutor Gary L. Robison, was then appointed and [IMMEDIATELY] begun an investigation. Whiteside gave him a statement that he had stabbe Love as the latter "was pulling a pistole from underneath the pillow on the bed". upon questioning by Robison however, Whiteside indicated that he had not actually seen a gun. No pistole was found on the permises; shortly after the police search following the stabbing, which had revealed no wepon, the victom's family had removed all of the victims possesions from the apartment. Robison interviewed Whiteside's companion who where present during the stabbing and none had seen a gun during the incident."

"IN NIX v. Whiteside - "There was an investigation done by Robison" In NIX there was no assumption of perhaps, Robison went out to talk and interview Whiteside companion.

In the case in question, certaintly there where at least five witnesses that were available, The Delatorre sisters, three Delatorre sisters, George Gamboa, and Sandoval. (see petitioners Mem. at statement of facts ¶ 9-12)

IN People v. Wolff. 727 F.2d 656 (Seventh Circuit 1984) In that case counsel out of hand rejected the witnesses with out interviewing or investigating them, and that was found to be something that fell below the minimal standards of professional competence.

Here we have Mr. Kliment up to a couple of days before trial not doing nothing to have them interview; knowing these witnesses were there but not doing nothing to have them interview; and "perhaps" if that would have been done, he could have made a strategic decision base on what ever interview have been conducted. No one from the public defender's office ever bother to go out and talk to these witnesses. Nobody ever assessed their testimony, made a decision as to wheter one, two, three, four, or all five of them could have or should have testified. Kliment out of hand rejected them.

The total lack of investigation that had occurred, cannot be ignore, There was absolutely no investigation of the alibi defense [prior] to that conversation about six days before jury selection.

Counsel has an obligation to investigate. No just to make up his mind as a defense attorney that he did not like the defense or that he think it didn't work in another trial.

IN fact the very same alibi witnesses, were presented in the trial of the attempted murder - There was some testimony on behalf of the state agains the petitioner, obviously. The jury deliberated in excess of 18 hours and it was a hung jury. There was a mistrial.

Certanly is proper for petitioner to ask the court to consider the "strength and unique circumstances" where you have two shooting on one night and the alibi witnesses are the same. And at trial in the attempt murder, there was no definitive finding of guilty by the jury. There was infact a mistrial declared because the jury could not unanimosly agree one way or the other.

This bloster the streght of petitioners argument, that if in fact the alibi had been investigated, if in fact the alibi would have been called to testify at petitioners murder trial there is a reasonable probability that the result of the proceeding would have been different.

Here petitioner has a case basically because of the attempt murder that had been pending for a couple of years before the actual trial on the murder case, because it all occurred on one

night in 1997, and theres Document 27 Filed 06/24/2008 Page 11 of 15 who was the Public Defender not an Assistant Public Defender, who testify he had nothing on the investigation of the alibi. He said he "Thought that he had filled out some sort of investigation report but couldn't find it in his file". So theres nothing to coroborate that.

Petitioner at the hearing presented testimonies that George Gamboa, Ramiro Sandoval and the Delatore sisters were ready willing and able to testified as they had testified in the attempt murder trial to the alibi for petitioner. There was no evidence that they couldn't have testified.

People v. Sutherland, 194 Ill. 2d 289, 742 N.E. 2d 306 (Supreme Court of ILL 2000) Talks about defense counsel providing ineffective assistance in failing to investigate and present evidence that could have played a prominet role in defendant's strategy in attempting to discredit, in that case physical evidence linking the defendant to a crime... Here petitioner has alibi witnesses who could have challenged the eyewitnesses testimony. (see Amayer 748 N.E. 2d 1251) There were only two pearsons that testify and gave conflicted testimonies of the night in question, Oct 29. 1997. and identified petitioner, one of whom actually had to be brought to court in handcuff, taken into custody because she failed to appear and was held in contemp of court.

People v. Montgomery, 846 F.2d 407 (7th cirt. 1988) Talks about the Strickland standar, and it says: This case, like Strickland, involves an ineffective assistance claim base on counsels failure to investigate. It goes on to say: strategic choices made after less then complete investigation are reasonable predsely to extent that reasonable professional Judgment support the limitations on investigation. In other words counsel has a duty to make a reasonable decision that makes particular investigations unnecessary.

From the evidence of the post-conviction proceeding, nothing was done to build a defense for the petitioner, absolutely nothing was done. And petitioner would ask the court to consider that that was not a reasonable decision that makes particular investigations unnecessary.

Quoting; United State v. Debago 780 F.2d 81 "The complete failure to investigate potentially corroborating witnesses can hardly be considered a tatical decision. An attorney who fails even to interview a readily available witness whose noncumulative testimony may potentially aid the defense should not be allowed automatically to defense his omission simply by rassing the shield of trial strategy and tatics."

Trial Strategy. One thing not putting out a defense and not building a defense and then five or six days before trial finally asserting a defense for what ever reason, does not jibe with what Mr. Kliment said he testified that on the 21st of January he gets into this argument with petitioner, and petitioner allegedly says something to him which makes him think that ethically he can't call the alibi witnesses, yet the next day on the 22nd of January he files an alibi defense with unknow addresses.

This is a situation where an attorney didn't do his job, and petitioner would ask for a finding of relief, ask the court to find that the outcome could have been different.

## Prejudice

Respondent argues that the Strickland claim fails because the state post-conviction trial court's holding that petitioner could not demostrate that he was prejudiced by counsel's failure to present the alibi defense at a minimum, objectively reasonable.

Petitioner was prejudiced by trial counsel, when he neglected to interview, investigate, subpoena, and or call the alibi witnesses for pititioner. There was no evidence that any of the alibi would have testify untruthfully— respondent goes on to argue that, "petitioner's argument, that there was a reasonable probability of aquital had counsel presented an alibi defense, for then the jury may have discredited the two witnesse's who testified at trial that petitioner was the shooter is besides the point. (see Resp Br. at 34)

But the fact remainds that there was no guilty verdict by the actual jury that heard the trial in 97 CF 2326, strongly suggests that that alibi testimony had raised doubts for at least some of the jurors. Also, the alibi would have been particularly helpful in the instant case given the dearth of evidence against the petitioner. As noted in the opening brief (see petitioners Mem. at sta. of facts) There was no physical evidence to connect the defendant to this shooting, and three of the five witnesses failed to identify petitioner. see Amaya 746 N.E 2d 1251

The two state witnesses that did identified pititioner gave conflicted stories of that night in question, and both Pearson and Johnson had pending cases and Pearson had a prior conviction. Johnson and Pearson even if they didn't recieved any "consideration" still had reasons to curry favor with the state, and that motive alone impeached their testimony. People v. Triplet: 108 Ill. 2d 463, 476 485 N.E 2d 9, 15 (1985)

Respondent argument that Nix bars petitioner from arguing that he was prejudiced by his attorney's refusal to present the false alibi evidence, is misplace. There where no evidence presented that the alibi was false in this case. Mr. Kliment testimony was that "Perhaps not testify truthfully." Nix v. Whiteside is misplace here — In Nix, Whiteside attorney did an investigation of the companion that were with Whiteside at the time of the stabbing — Therefore Whiteside attorney knew that he was contemplating perjury, and it also goes on to say that he immediately began an investigation.

In this case at bar — The matter is that trial counsel assume that "Perhaps" the alibi witnesses would not testify truthfully — Petitioner at the post-conviction hearing presented Castillo's testimony that he work for the Kane Co. Public Defenders office at the time of petitioners case — and that he never conducted any investigation into petitioner's case.

Kliment testimony was that he had filled out some sort of investigation report but he couldn't find it in his file. But that the investigators that participated in the investigation were listed in the discovery report.

Castillo was one of the listed investigators in the discovery report, Castillo as argue controdicted Kliment's testimony directly.

The respondent argues that Mr. Kliment had in sum, seen what the alibi would have said by looking at the tapes, But Kliment testify that he did not have all the alibi witnesses transcripts and that he was not aware of the bond reduction records, That he didn't review or didn't remember if he had all the transcripts from the witnesses in the 1997 case. (see P.C. Trans. at C000475 and C000479)

Moreover and more importantly Klimen testify that he base the opinion of the alibi whit others around the office, we talk.
(see C 442)

"It is ineffective assistance of counsel in an attorney relies on what others have done or thought, without investigating themselves"

Respondent also argues that Mr. Kliment couldn't present the alibi because of the allegedly what was said by petitioner to him on January 21st

Then the question becomes, going back to the discovery report as to what was actually filed, if he had all this information, there was an alibi out there, why didn't he prepare an alibi defense? Why he didn't asserted before he had his conversation on January 21st, why did he only assert it on the 22nd of January.

In the transcripts of the proceedings in 98 CF 535 on November 9th of 1998 there is a conversation between the court, Judge Hudson at the time, and Mr. Kliment

The court inquires, Quote:
Where do we stand on discovery? Are there any oustading issues you anticipate that may become a problem before the trial.

Mr. Kliment: No, I have a lot of discovery from the state. I have not filed an aswer in this case, but there is no affirmative defense I intend to raise.

See. Trail transc. at Novembe 9, pg 3 & 4

In November 9th 1998 Mr. Kliment did not intend to raise an affirmative defense.

Mr. Kliment may have cross-examined the state witnesses but he simply did not present a defense, or investigated the actul true of the alibi witnesses in this case.

Nix has been misplace in this case, because there was an investigation in whiteside case.

As petitioner points out, with all respect to, Nix v. Whiteside was rule upon the contixt of an investigation of the companion whom were present with whiteside at the time of the crime.

Petitioner prays this court makes an independant evaluation of the fact and evidence in this case.

" To establish the prejudice needed to support an ineffective assistance claim base on counsel's failure to present exculpatory evidence, a defendant need only show a "reasonable probability" that the addition of the exculpatory evidence would lead to a different result. Strickland v. Washington 466 U.S. 668, 694, 104 S.Ct 2052, 2068, 80 LEd 2d 674, 690 (1984)

People v. Sutherland, 194 N.E 2d 289, 297-99 742 N.E 2d 306, 311-12 (2000) In sutherland the Illinois supreme court found that the absence of the exculpatory evidence was prejudicial under Strickland, even though the court had found in a prior appeal that a trial erro did not warrant reversal, "Because of the substatial evidence liking the defendant to the crime" 194 ILL 2d at 299, 742 N.E 2d at 312. The situation here is the same as in Sutherland.

14 of 15

for these reasonds, as well those stated in opening Brief This court should reverse the order denying the post-conviction petition, reverse the conviction in this case and order a new trial.

## Conclusion.

For the forgoing reasons, the petitioner, Armando Amaya, respectfully request that this Court reverse the order denying the post conviction petition, reverse the conviction in this case, and order a new trial by granting relief in the Habeas corpus petition.

Respectfully submitted.

Armando Amaya

Armando Amaya
# K-75877
P.O. Box 2000
Tamms Ill. 62,988